IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THOMAS J. TADDER,

                     Plaintiff,                      OPINION AND ORDER

    v.

                                               13-cv-105-wmc

UNIVERSITY OF WISCONSIN-ROCK COUNTY,
THE BOARD OF REGENTS OF THE UNIVERSITY OF
WISCONSIN SYSTEM,
BRENT SMITH, and RAY CROSS,

                     Defendants.

---

In this employment discrimination action, plaintiff Thomas Tadder seeks damages and equitable relief for defendants' alleged violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, from defendants University of Wisconsin–Rock County, the Board of Regents of the University of Wisconsin System ("the Board"), Brent Smith in his official capacity as the President of the Board of Regents of the University of Wisconsin System, and Ray Cross in his official capacity as Chancellor of the UW Colleges and UW Extensions. In their motion to dismiss, defendants assert that: (1) the University of Wisconsin–Rock County is not a "suable" entity; (2) Tadder pleads insufficient facts with respect to his Rehabilitation Act claim to satisfy the requirements of Fed. R. Civ. P. 8(a); (3) Smith and Cross cannot be sued in their official capacities, because the complaint fails to allege their involvement in any violations of the ADA or Rehabilitation Act or, alternatively, their inclusion is redundant; (4) sovereign immunity under the Eleventh Amendment bars Tadder's ADA claims action against all defendants;

and (5) the claims for Tadder's punitive damages are barred under the ADA and Rehabilitation Act. (Dkt. #6). For the reasons set forth below, defendants' motion to dismiss Tadder's complaint will be granted in part and denied in part.

BACKGROUND

Tadder was hired by the Custodial Department of the University of Wisconsin–Madison for a position as "Building Maintenance Helper 2" in February of 1983. His appointment was the result of an initiative to employ individuals with mental or physical disabilities. With reasonable workplace accommodations, Tadder worked at the Madison campus until 1987, at which time he applied for and accepted a similar position at UW-Rock County. Tadder began working at the Rock County campus on January 4, 1988, where his job description included mopping floors, vacuuming carpets, cleaning blackboards and removing trash. Tadder alleges that he performed these essential functions successfully again with reasonable accommodations. At all times material to this action, defendants were aware of Tadder's need for certain workplace accommodations.

For purposes of this motion, the court construes all of Tadder's factual allegations as true and draws all reasonable inferences in his favor. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In 1994, Michael W. Connor became Tadder's first-line supervisor. Tadder alleges that Connor was singularly critical of his work performance, complaining about

Tadder's work pace and his inability to perform certain tasks due to his disability, such as operate a lawnmower or snowblower.

On February 7, 2008, while working a late afternoon/night shift, Tadder fell and injured his ankle. Tadder's injury precluded him from both (1) completing certain tasks that night, and (2) working for the next week. Tadder notified supervisory personnel of the injury and returned to work a week later.

Approximately two months later, on April 10, 2008, Connor told Tadder that he was fired. He also gave Tadder a letter which stated that his termination was for failure to remove garbage from his cleaning supply closet and leaving the maintenance shop unlocked on February 7, 2008, the same night Tadder injured his ankle. Over the University's objection that Tadder was ineligible for benefits, having been terminated for cause, Tadder later applied for and received unemployment benefits. Tadder also filed timely charges of discrimination pursuant to Title I of the ADA.

The United States Equal Employment Opportunity Commission ("EEOC") determined on October 24, 2011, that UW-Rock County is an employer within the meaning of the ADA; Tadder is a qualified individual with a disability; and UW-Rock County discriminated against Tadder by failing to provide reasonable accommodations and by terminating him. On November 16, 2012, the EEOC and the Department of Justice issued Tadder a notice of a right to sue within 90 days.

OPINION

I. Status of UW-Rock County as a Suable Entity

Defendants first contend that UW-Rock County is not competent to sue and be sued under Wisconsin law. They are correct. *See Derby v. Univ. of Wis.*, 54 F.R.D. 599, 600 (E.D. Wis. 1972), *aff'd* 489 F.2d 757 (7th Cir. 1973) (dismissing suit against UW-Madison and UW-Parkside because they are not natural or legal persons); *Alawiye v. Univ. of Wis.-Madison*, No. 06-C-233-S, 2006 U.S. Dist. LEXIS 52888, at *2 (W.D. Wis. July 25, 2006) (dismissing suit against UW-Madison because it is a non-suable entity). Tadder concedes that this case law prevails and has agreed to dismiss his claims against UW-Rock County.

II. Rehabilitation Act Claim

   A. Board of Regents

Defendants move to dismiss Tadder's Rehabilitation Act claims on grounds that the alleged facts fail to show (1) he is a "qualified individual with a disability" and (2) he was discriminated against because of this disability, pointing to the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940 (2009). Defendants argue that Tadder's allegations describing his disabilities amount to legal conclusions, not facts, and fail to state a plausible claim.

The basic standards for pleading in federal court are set out in Fed. R. Civ. P. 8(a)(2), which requires a plaintiff to make a short and plain statement showing

entitlement to relief under a cause of action. As defendants note, the Supreme Court has interpreted this to mean that (1) every element of each cause of action must be alleged; and (2) the surrounding factual allegations must be sufficient to raise the existence of each element above the level of speculation and into the realm of plausibility. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 663. This does not mean, however, that a federal court is precluded from drawing inferences or using its common sense to determine what is plausible. *Iqbal*, 556 U.S. at 663-64. The Seventh Circuit has stated that plausibility requires only that the plaintiff "give enough details about the subject-matter of the case to present a story that holds together." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

A plaintiff claiming discrimination by a recipient of federal funds under the Rehabilitation Act, 29 U.S.C. § 794 & §794a, must establish (1) that he or she is an individual with a disability; (2) who is otherwise qualified; (3) who has been excluded from a program (in this case, employment) solely because of the disability; and (4) the program at issue receives federal funds. *Byrne v. Bd. of Educ., Sch. Dist. of West Allis-West Milwaukee*, 979 F.2d 560, 563 (7th Cir. 1992).[1] Defendants appear to concede that Tadder has adequately pled the second and fourth requirements of a Rehabilitation Act claim, choosing to rest their motion to dismiss on the first and third elements. Accordingly, these elements will be the focus for this court.

1. **Allegations of a disability defined by the Rehabilitation Act.**

---

[1] Contrary to defendants' assertions, Tadder need not expressly plead that he requested reasonable accommodations for his disability, even though he may be required to offer proof he did so on summary judgment.

One way to be considered "disabled" under the Rehabilitation Act is to meet the definition of disabled under the ADA.[2] *Id*. at 563; 29 U.S.C. § 705(20)(B). A person has a "disability" under the ADA if he or she has "a physical or mental impairment that substantially limits one or more major life activities, has a record of like impairment, or is perceived as having such impairment." 42 U.S.C. § 12102(1). Examples of major life activities include caring for oneself, performing manual tasks, reaching, lifting, bending, speaking, learning, communicating, interacting with others, and working. *Id.* at § 12102(2)A). A major life activity "is substantially limited when the person is unable to perform it or is significantly restricted in the manner, condition or duration in which she can perform it in comparison to the general population." *Ermer v. Taylor Cnty*, No. 05-C-346-C, 2006 U.S. Dist. LEXIS 12514, at *4-5 (W.D. Wis. Mar. 23, 2006) (internal quotations and citations omitted).

Tadder alleges that he was hired by the University System as part of an effort to recruit and employ individuals with mental and/or physical disabilities. He was given supervision by other staff members and was restricted to performing tasks such as mopping floors, vacuuming, cleaning blackboards and removing trash, all of which apparently fell within his ability with reasonable accommodation. In contrast, because Tadder could not operate a lawnmower or a snowblower, his supervisor, Michael Connor, did not require him to do so. Thus, even if not suffering from a disability that

---

[2] The ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, changes relevant portions of the ADA, effective January 1, 2009. Pub.L. 110-325, § 8, 122 Stat. 3559. But the amendments are not retroactive. *Fredricksen v. UPS*, 581 F.3d 516, 521 n. 1 (7th Cir. 2009). Because the claims in this case accrued before January 1, 2009, the court must apply the pre-amendment version of the law.

substantially limits his ability to perform major life tasks, Tadder has at least alleged sufficient facts to plausibly support the conclusion that he was *perceived* by his employer to have such a disability. This by itself satisfies the first requirement of the Rehabilitation Act. *See* 42 U.S.C. § 12102(1) ("or is perceived as having such impairment.").

Tadder also sufficiently alleges enough facts to support a claim that he does suffer from an *actual* disability. He alleges that the EEOC found him disabled and that he was diagnosed by a Vocational Rehabilitation Counselor in 1982 as having a substantial vocational or occupational handicap. Although he does not point to a specific medical diagnosis leading to the vocational diagnosis (other than that he has diabetes), defendants cite no case holding that a plaintiff must allege an actual medical diagnosis at the pleading stage. Whatever its clinical name, Tadder alleges that his disability substantially limits his ability to work. Moreover, the alleged facts render this assertion plausible.

2. **Discrimination based solely because of disability**

Although defendants unsurprisingly dispute the reason for Tadder's termination, at the pleading stage the court only looks to whether Tadder's allegations of motive are plausible and rise above speculation. *Iqbal*, 556 U.S. at 663; *Byrne*, 979 F.2d at 563. Tadder has pled that his supervisor, Michael Connor, was frequently critical of Tadder's inability to perform certain tasks, which were made impossible by his disability. Tadder also alleges a timeline of events — his failure to empty garbage and unlock a cabinet, followed by termination almost two months later by Connor, with this incident being

cited as the reason — that permits a plausible inference that the incident was a pretext offered by Connor to hide a discriminatory purpose.

### B. Smith and Cross

Because Tadder's claim against the Board of Regents may proceed, Smith and Cross will be dismissed with respect to the Rehabilitation Act claim. To the extent sued in their official capacity, their presence is redundant. To the extent sued in their personal capacity, neither of the defendants is (personally) an entity refusing Tadder access to a federally-funded program, and thus there can be no cause of action under the Rehabilitation Act. Nor is there a viable action for deprivation of a federal statutory right under 42 U.S.C. § 1983. See *Huebschen v. Dep't of Health and Soc. Serv.*, 716 F.2d 1167, 1170 (7th Cir. 1983) ("[A] plaintiff cannot bring an action under section 1983 based upon Title VII against a person who could not be sued directly under Title VII."); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) ("Alsbrook cannot bring a section 1983 claim against the commissioners in their individual capacities when, as we have earlier concluded, he could not do so directly under the ADA.").

## III. ADA Title I Claim

### A. Board of Regents

The Board of Regents, as the representative entity of the University of Wisconsin system and therefore Tadder's employer, could be at least theoretically liable for any potential ADA violation caused by its agent, Michael Connor. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 70 (1986) ("[C]ourts have consistently held employers liable for

the discriminatory discharges of employees by supervisory personnel."). The Board argues, however, that it cannot be subjected to an ADA claim in federal court because of sovereign immunity granted by the Eleventh Amendment.[3] In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), the Supreme Court expressly held just that: the Eleventh Amendment prohibits private parties from suing states in federal court for monetary damages under Title I of the ADA. *Id.* at 372-73. Because the Board is considered to be an arm of the State of Wisconsin, it can claim sovereign immunity as if Tadder had named the State itself as a defendant. *See Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 749 (7th Cir. 2005) (holding that the Board is an "arm of the state" for Eleventh Amendment purposes).

Tadder seems to dispute defendants' characterization of the Board as an arm of the state by pointing to *Derby v. University of Wisconsin*, 54 F.R.D. 599 (E.D. Wis. 1972), asserting that the court in that case allowed the Board of Regents to be named as a defendant in a federal lawsuit. As defendants counter, however, there is no indication that the *Derby* court was presented with a motion to dismiss the Board on sovereign immunity grounds. Furthermore, it is unclear the Board was even a defendant. *Derby* allows for "members of the board of regents" to be retained as defendants for purposes of pursuing equitable relief under the *Ex parte Young* exception; it does not mention the Board of Regents in its corporate capacity. *Id.* at 600. Most importantly, the Eastern District of Wisconsin's decision in *Derby* predates the Seventh Circuit's *Joseph* decision

---

[3] The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI.

and to the extent inconsistent with that decision, is overruled by it. Because Eleventh Amendment sovereign immunity applies to Title I of the ADA, that claim must be dismissed with respect to defendant Board of Regents.

### B. Defendants Smith and Cross

Dismissal of the Board does not leave Tadder completely without recourse under the ADA. He may sue defendants Smith and Cross who, as individual persons, may be sued in their official capacities under Title I for prospective injunctive relief without violating the Eleventh Amendment. *Ex parte Young*, 209 U.S. 123, 167 (1908); *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 281 (1997). Still, a state official can be sued in his official capacity under *Ex parte Young* only to correct an ongoing violation of federal law and only if he has "some connection" with the challenged violation. 209 U.S. at 157; *Entm't Software Ass'n v. Blagojevich*, 404 F. Supp. 2d 1051, 1070 (N.D. Ill. 2005). While the Supreme Court has not elaborated on the meaning of the phrase "some connection" in concrete terms, it seems clear that a state official's generalized duty to uphold the law is insufficient by itself to establish "some connection" to an illegal state practice or law. See, e.g., *1st Westco Corp. v. Sch. Dist. of Phil.*, 6 F.3d 108, 115 (3d Cir. 1993). Here, Tadder has alleged more than an abstract connection between Smith and Cross and the challenged employment practice. As representatives of the Board of Regents of the University of Wisconsin System and Chancellor of the UW Colleges and UW-Extensions, respectively, Smith and Cross appear capable of carrying out the prospective injunctive relief to which Tadder might be entitled, including reinstatement.

Having established that Smith and Cross have the necessary connection to the enforcement of the ADA as it relates to Tadder, therefore, the court must consider whether Tadder's complaint (1) adequately alleges an ongoing violation of the ADA; and (2) seeks prospective injunctive relief. As to the first inquiry, the court initially notes that claims under the ADA and the Rehabilitation Act are largely "coextensive." *Jaros v. Ill. Dep't. of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012). In successfully alleging a claim for a violation of the Rehabilitation Act (see discussion *supra*), Tadder has alleged a viable discrimination claim against his employer under the ADA as well. Defendants respond that even if true, Tadder has no cause of action against Smith and Cross, who appear in the caption of the complaint and in the introductory section identifying the parties of the suit, but nowhere in the body of the complaint in connection with Tadder's termination. Defendants essentially argue that without any active wrongdoing on the part of these two defendants, there can be no claim against them. On the contrary, suing Smith and Cross in their official capacities is an acceptable method to sue the Board of Regents. Moreover, as just noted the Board — as Tadder's employer — is responsible under the ADA for the discriminatory firing that allegedly took place in 2008 through the act of its agent Michael Connor.

To answer the second inquiry, the court turns to the complaint's requested relief, since the *Ex parte Young* exception applies only to requests for prospective relief to correct an "ongoing violation" of federal law. Courts and commentators have noted the difficulty of distinguishing between retroactive and prospective relief in the context of the *Ex parte Young* exception. See generally *Edelman v. Jordan*, 415 U.S. 651, 677 (1974)

(distinguishing between prospective and retroactive relief); *Cory v. White*, 457 U.S. 85, 90-91 (1982); Erwin Chemerinksy, *Federal Jurisdiction* 456 (6th ed. 2012). Tadder's complaint breaks down fairly straightforwardly with respect to the three types of relief sought:

*First,* Tadder's request for reinstatement qualifies as prospective relief. See *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986) (holding that reinstatement clearly falls outside the prohibitions of the Eleventh Amendment); *Nelson v. Univ. of Tex.*, 535 F.3d 318, 322 (5th Cir. Tex. 2008) (noting that the 5th Circuit has always treated *Ex parte Young* as an appropriate vehicle for seeking reinstatement).

*Second*, Tadder's request for back pay is best characterized as a retroactive award rather than a prospective injunction because it would require "payment of funds from the state treasury." *Edelman*, 415 U.S. at 677. The fact that back payment is characterized in the complaint and supporting brief as equitable relief is irrelevant, because the Eleventh Amendment prohibits all awards of retroactive damages to be paid from the state treasury. *Id*.

*Third*, Tadder's requested injunction against defendants' future discriminatory practices is prospective relief.[4]

---

[4] Defendants also note that Tadder's request for punitive damages should be dismissed, because punitive damages are not available remedies for violations of the ADA or the Rehabilitation Act. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Tadder has since acknowledged this rule and agreed to strike the request for punitive damages from the complaint.

ORDER

IT IS ORDERED that:

(1) Defendants' motion to dismiss plaintiff's complaint (dkt. #6) is GRANTED with respect to defendant UW-Rock County.

(2) Defendants' motion to dismiss plaintiff's ADA claim is GRANTED with respect to claims against the Board of Regents of the University of Wisconsin System and all claims seeking back pay, and is DENIED with respect to other relief sought against defendants Brent Smith and Ray Cross in their official capacity.

(3) Defendants' motion to dismiss plaintiff's Rehabilitation Act claim is DENIED with respect to the Board of Regents of the University of Wisconsin System and GRANTED with respect to defendants Brent Smith and Ray Cross.

(4) Defendants' motion to strike plaintiff's request for punitive damages is GRANTED.

Entered this 30th day of July, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge